UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 15-187 (SRN/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Erik Becerra, | |
| Defendant. | |

Bradley Endicott, Assistant United States Attorney, for Plaintiff.
Manny Atwal for Defendant Erik Becerra.

**THIS MATTER** came before the undersigned United States Magistrate Judge on July 7, 2017, on Defendant Erik Becerra's pretrial suppression motions and *pro se* motion to dismiss the case, *inter alia*, on similar suppression grounds (ECF Nos. 61, 62,). Becerra seeks to suppress evidence obtained through the alleged illegal seizure and search of his person and car, and to suppress statements that were obtained allegedly in violation of his rights preserved by *Miranda v. Arizona*, 384 U.S. 436 (1966). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, the Government entered fifteen exhibits into evidence and offered testimony from Hennepin County Sheriff's Office Violent Task Force Investigator Brian Burtus and Brooklyn Center Police Detective Terry Olson. *See* Exhibit and Witness List, ECF No. 69. Becerra also supplemented the record after the hearing with a recorded interview Detective Olson had with Becerra's probation officer, Bobbi Harrington. *See id.* For the reasons set forth below, the Court recommends that the motions be **DENIED**.

**I.    Procedural Background**

On June 17, 2015, Becerra was charged with illegally possessing a firearm and ammunition

in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Indictment, ECF No. 10. Becerra thereafter filed a motion for a psychiatric evaluation to determine whether he is competent to stand trial. *See* Def.'s Mot. Regarding Competency, ECF No. 13. The Honorable Susan Richard Nelson granted Becerra's motion on June 30, 2015, *see* Order, ECF No. 15, and Becerra was transported to FCI-Englewood in Colorado for a mental health evaluation. Following the evaluation, the Court held a competency hearing on October 27, 2015, and concluded that Becerra was suffering from a mental disease or defect rendering him mentally incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. *See* Order 2–3, ECF No. 20 (citing 18 U.S.C. § 4241(d)). The Court ordered that Becerra be committed to the custody of the Attorney General to determine whether there was a substantial probability that Becerra would attain the capacity to permit the proceedings to go forward. *See id.* at 3–4 (citing 18 U.S.C. § 4241(d)). The Court scheduled a follow-up hearing for February 24, 2016. *Id.* at 4. Becerra was thereafter transported to MCFP-Springfield for further evaluation.

On July 21, 2016, the Court ordered that Becerra be involuntarily medicated in order to render him competent to stand trial, concluding that (1) important governmental interests are at stake, namely bringing to trial an individual accused of committing a serious crime; (2) involuntary medication will further those interests; (3) involuntary medication is necessary to further those interests, and there are no alternative or less intrusive treatments that could substantially achieve the same results; and (4) administration of the drugs is medically appropriate. *See Sell v. United States*, 539 U.S. 166, 180–81 (2003).

At the November 16, 2016 competency/status conference, pursuant to 18 U.S.C. § 4241(d)(2)(A), neither party objected to Becerra's treatment provider's request for an additional 120

2

days for continued treatment and evaluation to restore Becerra to competency. Order, ECF No. 41. Another competency/status conference was set for March 22, 2017, which was rescheduled to March 29, 2017, based on defense counsel's request. *Id.*; Notice, ECF No. 43.

On March 24, 2017, Dr. Preston Baecht prepared a forensic report in which she opined that Becerra is now competent to proceed forward with this case, so long as he maintains his current medication protocol. Gov't Ex. 2, ECF No. 47. Dr. Preston Baecht observed that Becerra demonstrates a good factual and rational understanding of the nature and pending consequences of the case against him, a good understanding of courtroom procedures and participant roles, and is capable of properly assisting in his defense. *Id.* Defense counsel met with Becerra on March 22, 2017, and reported to Dr. Preston Baecht that he is now capable of adequately understanding and discussing his plea options. *Id.* At the March 29, 2017 hearing, counsel represented that Becerra is able to assist in his defense and understands the consequences of pleading guilty, not guilty, or going to trial. Thereafter, the Court concluded that Becerra is mentally competent to stand trial so long as he maintains his current medication protocol. Order, ECF No 46.

On May 9, 2017, Becerra appeared before Judge Nelson for a scheduled change of plea hearing, but decided not to enter a guilty plea. *See* Minutes, ECF No. 53. A pretrial motions hearing was scheduled for July 7, 2017, where the Court heard evidence related to Becerra's motions to suppress statements, admissions, and answers, and to suppress evidence obtained as a result of search and seizure. Mots. to Suppress, ECF Nos. 61, 62. Following the hearing, Becerra also filed a *pro se* motion seeking to dismiss the case on various grounds and to join in his counsel's arguments filed in the supplemental memorandum on his behalf. *Pro Se* Mot., ECF No. 77; *see also* Ltr., ECF No. 81.

## II. Factual Background

After finding a gun and bullets inside a bag under the front seat of a vehicle he was driving, Becerra sought to relinquish these items as soon as possible to his probation officer, Bobbi Harrington. Gov't Ex. 8, ECF No. 69. On May 5, 2015, Becerra left the gun in the vehicle parked in the parking lot outside of the Brooklyn Center Probation Department ("BCPD"), put the bullets into his pocket, and went inside to explain the situation to Harrington. *See id.* After hearing what Becerra had to say, Harrington decided to call the police and stated that she needed an officer to arrest Becerra for a 72-hour hold because she believed he was under the influence of methamphetamine which constituted a violation of his supervised release. Gov't Ex. 1, ECF No. 69.

Investigator Burtus was dispatched to the BCPD to arrest Becerra, and was informed by the dispatch operator prior to his arrival that Becerra is a known gang member, had a history of weapons, and was not violent. Gov't Ex. 3, ECF No. 69. Upon arrival, Burtus saw Becerra sitting in the BCPD lobby waiting area and was met at the entrance by probation officer, Deanne Schultz, who told him that Becerra might have a weapon. Burtus also saw that there was a bulge in Becerra's coat pocket. Burtus immediately put Becerra in handcuffs and did not issue warnings pursuant to *Miranda*. Becerra then told Burtus that he had a gun in the car he was driving and ammunition in his pocket. Burtus searched Becerra and found the ammunition and the key to the car. Becerra was then secured in the back of a squad car while his car was searched and the gun was recovered.

Burtus then obtained a signed Apprehension and Detention Order, gave Becerra his *Miranda* warnings, and interrogated Becerra in the squad car. *See* Gov't Exs. 4, 8, ECF No. 69. The following day, Detective Olson obtained a DNA sample and interrogated Becerra again. Gov't Ex. 9, ECF No. 69.

### III.     Legal Analysis

#### A.     The Officers Had Probable Cause to Arrest Becerra at the BCPD

Becerra first contends that because he was not arrested pursuant to a warrant nor executed Apprehension and Detention Order, his arrest was illegal because the officers lacked probable cause to arrest him. Def.'s Mem. in Supp. of Mots. to Suppress 9–10, ECF No. 78. He argues that both his statements and evidence should be suppressed as they were obtained from a violation of his Fourth Amendment rights by his illegal arrest. *Id.* at 12 (citing *Davis v. United States*, 564 U.S. 229, 232 (2011)).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . .and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) (citing *Peterson v. Kopp*, 754 F.3d 594, 598 (8th Cir. 2014)). Here, a probation officer who worked closely with Becerra called the police because she suspected that Becerra was using methamphetamine in violation of his supervised release conditions. Gov't Ex. 1, ECF No. 69. Additionally, Burtus was made aware of Becerra's prior gang affiliations, history of weapons, and history of drug use, as well as was warned by another probation officer that she suspected Becerra had a weapon. Gov't Ex. 3, ECF No. 69. Burtus then saw a bulge in Becerra's pocket that he suspected could be a weapon. Burtus had probable cause at the time he arrested Becerra to believe that Becerra was violating his supervised release conditions and may be under the influence of methamphetamine and carrying a weapon. *See Greenman v. Jessen*, 787 F.3d at 888. The Court concludes that because Becerra was not illegally arrested in violation of his Fourth Amendment

rights, this is not a grounds for suppression.

  **B.**  **Suppression of Statements**

  In addition to the contention that any statements made by Becerra should be suppressed as fruit of an unlawful arrest, Becerra also argues that his statements should be suppressed as they were obtained during a custodial interrogation in violation of his Fifth Amendment rights. ECF No. 78 at 14–20.

  The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. In *Miranda v. Arizona*, the Supreme Court concluded that four specific warnings were necessary prior to a custodial interrogation in order to "assure that the individual's right to choose between silence and speech remain unfettered throughout the interrogation process." 384 U.S. at 469. "The basic rule of *Miranda* is that an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990) (internal citations omitted). Law enforcement officers must inform suspects of their *Miranda* rights before subjecting them to custodial interrogations. *United States v. Sanchez*, 676 F.3d 627, 630 (8th Cir. 2012). "Failure to do so results in a violation of the suspect's Fifth Amendment rights and renders any statement gained from the violation inadmissible in the government's case-in-chief." *Id.*; *see also Stansbury v. California*, 511 U.S. 318, 322 (1994) (holding that statements elicited from a suspect in violation of *Miranda* are inadmissible).

  A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *United States v. Flores-Sandoval*, 474 F.3d 1142, 1147 (8th Cir. 2007). "The ultimate inquiry

to determine custody for *Miranda* purposes is whether there was a formal arrest, or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* Custody depends on the totality of the circumstances, and the Eighth Circuit considers six factors when determining whether a person was in custody for purposes of the Fifth Amendment:

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;

(2) whether the suspect possessed unrestrained freedom of movement during questioning;

(3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

(4) whether strong arm tactics or deceptive stratagems were employed during questioning;

(5) whether the atmosphere of the questioning was police-dominated; or

(6) whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F.2d at 1349. "The ultimate test is whether a reasonable person in that position would have felt free to end the interview." *United States v. Aldridge*, 664 F.3d 705, 711 (8th Cir. 2011). Absent custodial interrogation, there is no legal requirement that a suspect be given any warnings. *See Sanchez,* 676 F.3d at 630.

The term "interrogation" under *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). A statement is voluntary if it is the "product of an essentially free and unconstrained choice" by the speaker. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). The Court looks at the totality of the circumstances in determining

7

whether a statement is voluntary, including the tactics used by law enforcement, the details of the conversation, and any characteristics of the accused that might cause his will to be easily overborne. *See United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987).

### 1. Statements made in BCPD lobby

Becerra first seeks to suppress any un-*Mirandized* statements he made after placed in handcuffs and arrested in the BCPD lobby. There is no dispute that Becerra was both in custody and was not given *Miranda* warnings when he made statements about the gun in his vehicle. As an initial matter, the Court assumes without deciding that any statement made by Becerra in the BCPD lobby was made in response to some kind of officer questioning. "Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *United States v. Washington*, 431 U.S. 181, 187 (1977). In *New York v. Quarles*, the United States Supreme Court created a public safety exception "to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence." 467 U.S. 649, 655 (1984). In *Quarles*, similar to the facts in this case, where officers were seeking to obtain the location of a gun from a suspect, the Supreme Court held that the statement by the suspect was admissible against him, even though he was in custody and not afforded his *Miranda* warnings prior to questioning. *See id.* The Supreme Court overturned a lower court and concluded that a statement made in response to "the officer's failure to read respondent his *Miranda* rights before attempting to locate the weapon . . . [is not] an illegal fruit of a *Miranda* violation." *Id.* at 659–60. Therefore, the Court concludes that pursuant to the public safety exception established in *Quarles*, any statement made in the lobby of the BCPD prior to being read his *Miranda* warnings, though the product of custodial interrogation, is not an inadmissible illegal fruit of a *Miranda* violation. *See id.*

### 2. *Mirandized* Recorded Statements

8

Becerra next contends that the recorded statements he made on May 5 and May 6, 2015, after receiving and waiving his rights pursuant to *Miranda*, were not made pursuant to a voluntary, knowing, and intelligent waiver because he suffers from mental impairments and his will was overborne by the officers. ECF No. 78 at 16–20. Specifically, he claims that his will was overborne by Burtus during his May 5, 2015, statements when he interrogated him in the vehicle while handcuffed and by Detective Olson on May 6, 2015, when Olson stated that, "You have to comply with the process. If you don't, I'll take you to the hospital and do a blood draw." Gov't Ex. 9, ECF No. 69; ECF No. 78 at 16–20.

The officers both testified that they believed Becerra understood his rights and were not concerned that drug use or his mental health precluded him from understanding the decision he made when he chose to have a conversation with each of them. ECF No. 73 at 30–32, 61. Additionally, the Court does not find that interviewing Becerra in the car while handcuffed nor warning Becerra that he will be taken to a hospital for a blood draw if he fails to comply, constitutes intimidation or coercion. Furthermore, having reviewed the entirety of the recorded conversation, the Court concludes that there is no evidence that Becerra was unable to make the choice to speak with the officers after being afforded his *Miranda* rights and deciding to engage in the conversation. *See, e.g., United States v. Byrne*, 83 F.3d 984, 989 (8th Cir.1996) (reasoning that despite evidence that defendant had taken drugs, behavior showed waiver was voluntary); *United States v. Turner*, 157 F.3d 552, 556 (8th Cir. 1998) (holding that although a defendant later exhibited bizarre behavior and may have exhibited signs of mental illness, this does not show that at the time of his confession he lacked the mental capacity to waive his rights). When the recorded statements were made, Burtus and Olson advised Becerra of his *Miranda* rights, and he voluntarily and intelligently waived those rights. Govt' Exs. 8, 9, ECF No. 69. Therefore, these statements should not be suppressed.

### C.  Search of Becerra and the Vehicle

Becerra only appears to seek suppression of evidence pursuant to illegal search and seizure on the ground that it is the fruit of an unlawful arrest. Having concluded that the arrest was not unlawful, the Court also observes that the warrantless searches of Becerra's person and the vehicle are valid on other grounds as described below.

After Becerra was arrested, Burtus searched him and recovered, *inter alia*, the ammunition in his pocket and the key to the vehicle he was driving. Warrantless searches, meaning searches conducted "without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). This is to ensure officer safety, when taking an individual into his or her custody, as well as to ensure the preservation of evidence. *See id.* at 339; *see also United States. v. Robinson*, 414 U.S. 218, 230–234 (1973); *Chimel v. California*, 395 U.S. 752, 763 (1969). Becerra does not appear to dispute, and as the Court now concludes that Becerra was lawfully arrested, the warrantless search of his person pursuant to lawful arrest and recovery of evidence, did not violate Becerra's Fourth Amendment rights.

Burtus recovered the car key from Becerra's person and was told by Becerra that there was a gun in his vehicle. Burtus and other officers, after securing Becerra in the back of a squad car, then proceeded to use the key to enter the vehicle and to search it. Another exception to the warrant requirement is the "automobile exception." This exception to the warrant requirement "authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009). The automobile exception applies to "the containers within [the vehicle] where they have probable

10

cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991).

Additionally, an exception to the warrant requirement exists where there are exigent circumstances. Where "the police d[o] not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." *Kentucky v. King*, 563 U.S. 452, 462 (2011). It is well settled that "to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search."*Id.* at 460 (citing *Brigham City, Utah v. Stewart*, 547 U.S. 398, 403 (2006); *Georgia v. Randolph*, 547 U.S. 103, 116, n.6 (2006); *Minnesota v. Olson*, 495 U.S. 91, 100, (1990)).

Finally, where a vehicle would be impounded and searched pursuant to an inventory policy, the search is valid pursuant to the inevitable discovery doctrine.

> To succeed under the inevitable-discovery exception to the exclusionary rule, the government must prove by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.

*United States v. Hammons*, 152 F.3d 1025, 1029 (8th Cir. 1998) (quoting *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)). The policy rationale undergirding the inevitable discovery exclusionary rule exception is that suppression "of evidence that would inevitably have been discovered would . . . put the government in a worse position, because the police would have obtained that evidence [even] if no [police] misconduct had taken place." *Nix v. Williams*, 467 U.S. 431, 444 (1984).

Here, having been told that there was a gun in the vehicle and having just obtained

11

ammunition from Becerra's person, the warrantless search of the vehicle that Becerra was driving is supported by both the automobile and exigent circumstances exceptions to the Fourth Amendment prohibition against warrantless search and seizure. *Davis*, 569 F.3d at 816; *King*, 563 U.S. at 462. Finally, even assuming without deciding that the above exceptions to the warrant requirements were not applicable, Burtus testified at the hearing "the vehicle was going to get towed, so we -- it would have been searched anyways with an inventory search." Tr. 22, ECF No. 76. Indeed, the vehicle was towed and inventoried pursuant to the Brooklyn Center Policy Department Vehicle Towing, Auto Impound & Inventory policies. Gov't Exs. 6, 7, ECF No. 69. The Court additionally concludes that the Government has met its burden to show that: (1) there was a reasonable probability that the evidence in the vehicle would have been discovered by lawful means pursuant to its impound and inventory policy in the absence of any police misconduct or Fourth Amendment violation, and (2) that after arresting Becerra for a supervised release violation for suspected use of methamphetamine, and being made aware that there was a weapon in the vehicle, the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation. *See Hammons*, 152 F.3d at 1029.

### D.   *Pro Se* Motion to Dismiss

Mr. Becerra has also filed a *pro se* motion to dismiss (ECF No. 77). A copy of that motion was sent to counsel for Defendant, as the court generally declines to rule upon *pro se* motions filed by represented defendants. (ECF No. 81) Thereafter, of September 5, 2017, the court received a letter from Defendant which appears to be further argumentation regarding Defendant's *pro se* motion. On September 7, 2017, counsel for Defendant wrote to the court that she had consulted with her client about the *pro se* motion, that he wishes to continue to be represented by counsel, and understands that the court will not consider his *pro se* motion if he is represented. (ECF No. 83).

The court concludes that nothing further need be said about the motion and ECF No. 77 should be terminated.

### IV.     Recommendation

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Erik Becerra's motion to suppress statements, admissions, and answers (ECF No. 61) be **DENIED**.

2. Erik Becerra's motion to suppress evidence obtained as a result of search and seizure (ECF No. 62) be **DENIED**.

3. Erik Becerra's *pro se* motion to dismiss (ECF No. 77) be **TERMINATED**.

DATED: September 19, 2017                                    *s/Franklin L. Noel*
                                                             FRANKLIN L. NOEL
                                                             United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 3, 2017**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **October 3. 2017** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.