UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | File No. 15-CR-187 (SRN/FLN) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION & ORDER |
| Erik Becerra, | |
| Defendant. | |

Bradley M. Endicott and Lindsey E. Middlecamp, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for the Government.

Manvir K. Atwal and Lisa M. Lopez, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Government's pre-trial Motion in Limine to Preclude Testimony or Arguments that Encourage Jury Nullification ("Gov't's Mot.") [Doc. No. 103]. For the reasons set forth below, and as stated on the record during the second day of Defendant's trial, the Court grants the Government's Motion.

### I. BACKGROUND

Defendant Erik Becerra ("Becerra") is charged with one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, both in violation of 18 U.S.C. § 922(g)(1) and § 924(e). (Am. Indictment, Counts 1–2 [Doc. No. 111].) Becerra's trial commenced on December 11, 2017, and as of the date and time of the Court's ruling on this motion, his trial was still underway.

Before trial, the Government filed a motion in limine urging this Court to preclude "any attempts by the defense to encourage jury nullification." (Gov't's Mot. at 2.) Becerra opposed. (*See* Def.'s Opp'n [Doc. No. 106].). At the final pre-trial conference, this Court ordered supplemental briefing, which the parties duly submitted. (*See* Min. Entry for Nov. 17, 2017 Proceedings [Doc. No. 109], at 2; Def.'s Suppl. Mem. [Doc. No. 112]; Gov't's Suppl. Mem. [Doc. No. 116].)

The Government argues that Becerra should be prohibited from advancing any arguments to try to "justify" his alleged possession of a gun and ammunition—for example, by claiming that he was merely handing over the weapon and ammunition to his probation officer on the day of his arrest. (Gov't's Mot. at 2.) First, the Government contends that a "defendant's justification or state-of-mind behind possessing the firearm is irrelevant" to the three elements needed for a conviction, and thus arguments going to those issues would "serve no purpose other than to encourage jury nullification." (*Id.*; Gov't's Suppl. Mem. at 8.) In the alternative, the Government argues that even if relevant, evidence regarding the circumstances of how Becerra came to possess the gun should nevertheless be excluded under Federal Rule of Evidence 403 because it would mislead and confuse the jury. (Gov't's Suppl. Mem. at 8.) Second, the Government urges this Court to preclude the "innocent possession" defense at trial—an affirmative defense in felon-in-possession cases that thus far has only been recognized under limited circumstances by the District of Columbia Circuit Court of Appeals. (*Id.* at 2–8.) The Government argues that this defense is precluded by the statutory text as several circuits have held. (*Id.* at 7.)

For his part, Becerra argues that granting the Government's motion would contravene the Federal Rules of Evidence and more importantly, effectively deprive him of his constitutional right to a fair trial, to tell his full story, and to present a full defense. (*See* Def.'s Opp'n; Def.'s Suppl. Mem.) First, Becerra argues that he should be permitted to offer "a full account as to how [he] came to possess the offending item(s) at issue, an explanation as to why he came to possess said item(s), how long he possessed said item(s), and so on" as "these matters are directly relevant" to the element of knowing possession. (Def.'s Suppl. Mem. at 3.) In other words, Becerra argues that he must be "permitted to demonstrate that any touching was too fleeting to pass muster under the charged statute," or "that any possession was insufficiently knowing to result in a guilty verdict." (*Id.* at 4.) Second, Becerra also argues that this Court should not preclude an "innocent possession" defense before the full trial evidence is in. (*Id.* at 6.) He stresses that even if several federal circuit courts have rejected the "innocent possession" defense, the availability of the defense is still an open question in the Eighth Circuit. (*Id.*)

On the morning of December 11, 2017, just before the start of Becerra's jury trial, the Court advised the parties that it would defer ruling on the Government's motion until the Government finished its case in chief and Becerra decided whether he would testify on his own behalf.[1] On December 12, 2017, during the second day of trial, Becerra elected to testify, and the Court requested that he proffer some evidence that would

---

[1] The Court did, however, preclude Becerra from raising the "innocent possession" defense in his opening statement since, even under the D.C. Circuit Court authority in *United States v. Mason*, 233 F.3d 619 (D.C. Cir. 2000), any such instruction should only be given under very limited factual circumstances which must be established at trial.

support an "innocent possession" defense so that the Court could make the appropriate admissibility determination and rule on the Government's motion. The Court underscored that its ruling would be based on the relevance of the proffered testimony.

That same afternoon, the Court entertained a proffer by Becerra's counsel, as well as a statement offered directly by Becerra. In his statement, while asking the Court to permit an "innocent possession" defense, Becerra also strongly contested the constitutionality of the search of the vehicle where the gun was ultimately found the afternoon of May 5, 2015.

The proffer by Becerra's counsel was as follows. As to how he came to drive the red car that was searched on the day of his arrest, Becerra stated that on May 4, 2015, he went to a car dealership looking for a car to purchase. He contends that someone at the car dealership then put him in touch with another individual who subsequently let him keep the car temporarily in order to test drive it. This red car, however, was not test-driven from the dealership.

In the early morning hours of May 5, 2015, at approximately 4:30 to 5 a.m., Becerra drove the red car to the Minneapolis-St. Paul airport and parked it. Very concerned for his safety with respect to a domestic issue and believing that he was being followed, Becerra made contact with the airport police and asked for their help. According to him, however, the airport police were not helpful and did not believe him. Specifically, he believes that they did not take seriously his requests to follow up regarding a vehicle that was following him.

After his exchange with the airport police, Becerra went back to the red car and for the first time noticed what he thought might be a gun under the driver's seat. When asked by the Court why he did not immediately notify the airport police about the object he thought might be a gun, defense counsel indicated that it was because by then, Becerra had no trust in the airport police officers since they had declined to assist him or follow up on his requests.

From the airport, Becerra drove to his probation office located in Brooklyn Center, Minnesota, wishing to speak to his probation officer, Bobbi Harrington ("Harrington"). When he arrived at the probation office, it had not yet opened for the day. Because the probation office was closed, Becerra went to two establishments very close by. First, he stopped at a Holiday gas station. Afterward, he drove to and went inside of a Walmart, which is also in the same general vicinity.

There is some uncertainty as to what happened when Becerra went into Walmart. In some prior out-of-court testimony, Becerra appears to have told an officer that he actually took the gun when he went inside the Walmart. But apparently in another statement, Becerra stated that he could not recall whether he brought the gun into the Walmart. Defense counsel also explained that Becerra went into the Walmart to purchase some gifts.

Although probation services only has a record of Becerra appearing at the office on two occasions that day, he contends that he went back to the probation office for a second time, but again could not speak with Harrington. Becerra left a note addressed to her, stating that he would be back at 4 p.m. that day. Becerra then drove—with the gun

5

still in the vehicle—to Apple Valley, Minnesota, some distance away, to drop off some gifts.

Later that afternoon, Becerra drove back from Apple Valley to the probation office in Brooklyn Center, and arrived there at approximately 12:35 to 12:45 p.m. He parked the red car, put the ammunition in his pocket, left the gun inside the vehicle, and went into the probation office. Becerra was finally able to make contact with Harrington at that time. But during their initial exchange in the lobby, Becerra did not tell Harrington about the gun and ammunition. Rather, the testimony so far evidences that it was only after he was handcuffed by Officer Burtus and informed that he was under arrest that Becerra first disclosed that a gun was in the red car and that he had ammunition in his pocket.

The Court notes that Becerra's proffer and Harrington's testimony during the first day of trial both evidence that Becerra's conduct on May 4th and 5th occurred in the context of expressions by Becerra of constant concern and fear about his safety. Harrington testified that Becerra had specifically expressed to her on a number of occasions his fear about his safety, and that she in fact gave him contact information for an FBI agent.

After Becerra's proffer, the Court adjourned for a recess, and then ruled from the bench as follows.

## II.   DISCUSSION

In *United States v. Mason*, 233 F.3d 619 (D.C. Cir. 2000)—the relevant D.C. Circuit case—the D.C. Circuit was the first (and so far only) federal court of appeals to recognize and define the "innocent possession" defense to § 922(g)(1). *Mason* involved a

delivery driver who came upon a brown paper bag on the ground while he was out making a delivery. 233 F.3d at 621. The paper bag contained a gun with ammunition in it. *Id.* He picked it up and took it with him to his truck, claiming he did so because there was a school in the area and there were children outside. *Id.* The defendant tucked the weapon into his weight belt and proceeded to the Library of Congress, his next stop, where he intended to turn the gun over to a police officer he knew. *Id.* But before he could do so, another officer observed the gun and arrested him. *Id.*

A jury convicted Mason of one count of unlawful possession of a firearm and ammunition in violation of § 922(g)(1), but the D.C. Circuit reversed and remanded for a new trial. *Id.* at 621–22, 625. The D.C. Circuit held that the district court should have instructed the jury on the "innocent possession" defense. *Id.* at 621. Defining the narrow contours of that defense, the D.C. Circuit held that a defendant may only invoke the defense when two requirements are met: the evidence must show that "(1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory—*i.e.*, in light of the circumstances presented, there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible." *Id.* at 624. As to the second prong, the Court further concluded that "a defendant's actions must demonstrate both that he had the intent to turn the weapon over to the police and that he was pursuing such an intent with immediacy and through a reasonable course of conduct." *Id.* (quoting *Logan v. United States*, 402 A.2d 822, 827 (D.C. 1979)).

Since *Mason*, five federal circuits have expressly rejected the "innocent possession" defense defined by that case, primarily on grounds that the defense is precluded by the statutory text. *See United States v. Baker*, 508 F.3d 1321, 1327 (10th Cir. 2007); *United States v. Johnson*, 459 F.3d 990, 996 (9th Cir. 2006); *United States v. Gilbert*, 430 F.3d 215, 216 (4th Cir. 2005); *United States v. Teemer*, 394 F.3d 59, 63–65 (1st Cir. 2005); *United States v. Hendricks*, 319 F.3d 993, 1007 (7th Cir. 2003); *see also United States v. Jackson*, 598 F.3d 340, 349 (7th Cir. 2010) ("[W]e have not recognized such a[n] ["innocent possession"] defense and decline to do so in this case.")

The Eighth Circuit, however, has thus far declined to affirmatively rule on the defense's availability in this circuit. *See, e.g.*, *United States v. Likens*, 464 F.3d 823, 826 (8th Cir. 2006) ("[Defendant] did not commit a technical or accidental violation of the statute, nor, assuming without deciding that such a defense might be available in a proper case, was his possession innocent or transitory.") Nevertheless, the Eighth Circuit has made clear that in order to invoke such a defense if it were available, a defendant would have to establish the "factual predicate" necessary for the instruction. *See, e.g.*, *United States v. Montgomery*, 444 F.3d 1023, 1026 (8th Cir. 2006). For instance, in *United States v. Montgomery*, the Eighth Circuit affirmed the district court's denial of the "transitory or innocent possession" jury instruction where the defendant had helped his father purchase guns from a pawn shop and had carried the weapons out to his father's car. *Id.* at 1025–26. After the defendant was convicted of one count under § 922(g)(1), he sought reversal, contending that "the evidence only showed transitory possession." *Id.* at 1026. The Eighth Circuit disagreed, stating that "[s]ince Montgomery neither acquired

8

the firearms innocently nor intended to turn them over to law enforcement, *see United States v. Mason*, 233 F.3d 619, 624 (D.C. Cir. 2000)," he had not "establish[ed] the factual predicate for an instruction on innocent or transitory possession." *Id.*

The Eighth Circuit has also opined on the availability of the defense in several more recent decisions. Again, without explicitly adopting the D.C. Circuit's formulation, the Eighth Circuit has stated that it declined to determine whether to adopt the defense because the evidence before it did not meet the two prongs of *Mason*. For instance, in *United States v. Byers*, the Eighth Circuit held that, "[l]eaving open the question whether the duration of possession might ever be relevant to a finding of knowing possession, . . . the facts in the instant case did not warrant or require an instruction to that effect." 603 F.3d 503, 507 (8th Cir. 2010). Next, the court held that "[w]ith respect to the question of innocent or transitory possession," Byers "ha[d] not demonstrated that he obtained the firearms innocently without an illicit purpose or that he tried to rid himself of them as promptly as reasonably possible," alluding to the two elements of *Mason*. *Id.* Indeed, the Eighth Circuit reasoned, the defendant's possession had been "transitory" only because he had dropped the weapons while fleeing to avoid capture. *Id.* Thus, the Eighth Circuit declined yet again to decide whether the defense would ever be available. *Id.*; *see also United States v. Wright*, 682 F.3d 1088, 1090–91 (8th Cir. 2012) (stating that the defense of "transitory or innocent possession," although not yet adopted by the Eighth Circuit, did not apply because the defendant had failed to rid himself of the firearm as promptly as reasonably possible after learning of its presence in the car that he occupied).

Here, the Court finds that even if the "innocent possession" defense were permitted by the Eighth Circuit, although the present facts are distinguishable from *Montgomery* and *Byers*, Becerra has nevertheless failed to establish the "factual predicate" necessary to support a jury instruction on the defense. Even assuming, without deciding, that his proffer showed that he obtained the gun and ammunition innocently and with no illicit purpose, it still does not show that "he had the intent to turn [them] over to the police and that he was pursuing such an intent with *immediacy* and through a *reasonable* course of conduct." *Mason*, 233 F.3d at 624 (emphasis added).

The evidence indicates that Becerra learned about the presence of the gun between 4:30 and 5 a.m. on May 5th. But it was not until he was arrested at around 1 p.m. later that day that he first informed law enforcement of the gun and ammunition. There were countless occasions during those 7 or so hours between his discovery of the gun and his arrest, when he could have reasonably taken steps to turn over the prohibited items to law enforcement. If he did not trust the airport police, there were any number of police departments between the Minneapolis-St. Paul airport and the probation office, and between the probation office and Apple Valley—a distance Becerra drove twice—where he could have turned over the gun and ammunition.

Instead, during all those hours, Becerra retained possession of these prohibited items. He did not bring the gun into the probation office. He might have brought the gun into Walmart. And throughout this period of time, what he did express to law-enforcement officers was that he feared for his safety—a position that seems inconsistent with his contention that all he was doing was trying to turn over the gun and ammunition.

10

Under these circumstances, the Court finds that Becerra's conduct does not satisfy the second prong of *Mason*, and therefore he may not invoke the "innocent possession" defense.

With respect to Becerra's position that he should nonetheless be able to testify about his intentions before the jury, the Court disagrees because there is no relevance to it. In the absence of an "innocent possession" defense, the reasons why Becerra did things the way he did has no relevance to whether or not he was in possession of the firearm and the ammunition. But it certainly does raise a concern about confusing the jury, making them wonder about the testimony and whether they would be permitted to find him not guilty because he intended to turn the weapon and ammunition over to the police.

Accordingly, for all of the aforementioned reasons, the Government's Motion in Limine is granted.

### III.  ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** the Government's Motion in Limine [Doc. No. 103] is **GRANTED** as explained herein.

Dated: December 13, 2017                s/Susan Richard Nelson
                                        SUSAN RICHARD NELSON
                                        United States District Judge